# IN THE COURT OF APPEALS OF IOWA

No. 23-0190
Filed April 12, 2023

**IN THE INTEREST OF J.M. and A.M.,**
**Minor Children,**

**J.M., Father,**
Appellant.
_____

Appeal from the Iowa District Court for Buena Vista County, Kristal L. Phillips, District Associate Judge.

The father appeals termination of his parental rights to two children. **AFFIRMED.**

Molly Vakulskas Joly of Vakulskas Law Firm, P.C., Sioux City, for appellant father.

Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney General, for appellee State.

Lisa Kay Mazurek, Cherokee, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Badding and Buller, JJ.

**BULLER, Judge.**

The father appeals termination of his parental rights to two children. Based on the father's lengthy history of domestic abuse, repeat violations of no-contact orders, and belligerent behavior toward social workers, we affirm.

## I. Background Facts and Proceedings

The father appeals the termination of his rights to children born in 2021 and 2020. The family first came to the attention of the Iowa Department of Health and Human Services (HHS) long before the birth of the children at issue in this appeal. In earlier proceedings, the mother's and father's rights to other children were terminated because of longstanding problems with substance abuse and domestic violence.

More recently, HHS became involved when one of the children at issue was just shy of one year old and the mother was pregnant with the other. The father punched the mother in the face because one of the children was crying. The father was charged with domestic abuse, and HHS founded a child abuse report. The father pled guilty and was sentenced to twenty-four days in jail. A no-contact order was issued between the father and the mother, and that order was continued through the juvenile cases. The father was later charged with more than ten counts of violating the no-contact order, as well as harassment, for contacting the mother.

By November 2021, the children were removed from the home following the mother's admission to using methamphetamine during and after her pregnancy with the youngest child. The father's visitation after this was inconsistent, in part due to his failure to confirm appointments and failure to notify the provider that he

had been incarcerated. As recently as the months preceding termination, the father missed multiple visits.

The father participated with few of the services he was offered throughout the lifetime of this case and the related matters. He also failed to appear at the adjudication hearing, despite being properly served. He appeared at the dispositional hearing but, in the juvenile court's words, "was visibly agitated during the proceedings." He still had not taken advantage of any of the services offered as of that hearing. Some of the father's agitation at the hearing appeared to be due to wait times for some services, yet he also refused to work with a social worker to access those services sooner. By contrast, the mother generally participated with services, and the court returned the children to her custody and care in August 2022.

As the permanency hearing neared, the father began more consistently attending appointments for therapy. Even then, the provider reported that the father continued to struggle with anger issues. Consistent with that observation, when a social worker asked the father to submit to drug testing, the father became "very belligerent." While the father eventually complied with the drug-testing request, the results were invalid because of a low creatinine level.

Shortly before the termination trial, the father signed a written consent to termination, but he then filed a notice purporting to withdraw that consent. Following a contested termination trial, the State and the children's guardian ad litem recommended termination, and the juvenile court so ordered. The father appeals.

## II.    Standard of Review

"We review termination proceedings de novo." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).  "The primary interest in termination proceedings is the best interests of the child." *Id.*

## III.    Discussion

Our three-step analysis for reviewing terminations of parental rights is well-established:

> First, we "determine whether any ground for termination under [Iowa Code] section 232.116(1) [(2022)] has been established."  If we determine "that a ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." Finally, if we conclude the statutory best-interest framework supports termination, "we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights."

*In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018) (quoting *In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2016)).

We understand the father to challenge the evidence supporting the last element of Iowa Code section 232.116(1)(h), which requires proof "the child cannot be returned to the custody of the child's parents" at the present time.  *See A.S.*, 906 N.W.2d at 473 (evaluating whether the child could be returned to the parent's custody "at the time of the termination hearing").  We reject the father's claim and affirm the juvenile court.  In particular, we agree with the juvenile court's finding that the children cannot be safely returned due to the danger posed by the father, as shown by his hostile and angry behavior directed at the social worker, his repeated abuse of the mother inside the family home, and his numerous violations of the no-contact order.  We also agree with the State's observation that the

father's lack of progress to unsupervised visits weighs heavily against return to his custody. *See In re C.N.*, No. 19-1861, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020) ("[The mother] never progressed to unsupervised visits or trial home visits. Without this necessary progression, we cannot say the children could have returned to the mother's care."). Last, to the extent that the father resists termination on the belief that he should have visitation while the children are in the mother's care, the father's repeated abuse and harassment of the mother (as evidenced by his criminal convictions and no-contact-order violations) establishes he cannot successfully co-parent.

The father also appears to challenge whether termination is in the children's best interests, though the only coherent reason he offers is that they will miss out on child support. The loss of child support is not an independently sufficient reason to halt termination that is otherwise in the children's best interests. *See In re H.S.*, 805 N.W.2d 737, 749 (Iowa 2011). But even if the case law held otherwise, the uncontested record evidence here is that the mother can financially support the children without the father's contribution. We have little trouble concluding that the danger posed by the domestic violence far outweighs the loss of any financial contributions the father could make, and we find termination is in the children's best interests.

To the extent the father arguably invokes the permissive bond exception to termination recognized by section 232.116(3), we reject that claim as well. Even if we were to credit the father's subjective assertion that he loves the children, a parent's love is not enough to prevent termination, nor is the mere existence of a bond. *See In re A.B.*, 956 N.W.2d 162, 169–70 (Iowa 2021); *In re D.W.*, 791

N.W.2d 703, 709 (Iowa 2010). The father bore the burden to prove application of this exception by clear and convincing evidence, and he failed to carry that burden. *See A.S.*, 906 N.W.2d at 476. Actions speak louder than words, and the father's history of domestic abuse drowns out any bond he claims with these children.

**AFFIRMED.**